UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WILLIE SUMMEOUR, III,     )
     )
     Plaintiff,     )
     )
     )
v.     )     3:07-CV-122
     )     (VARLAN/SHIRLEY)
     )
MICHAEL J. ASTRUE,     )
Commissioner of     )
Social Security,     )
     )
     Defendant.     )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Brief in Support [Docs. 10 & 11] and the Defendant's Motion for Summary Judgment & Memorandum in Support [Docs. 12 & 13]. Plaintiff Willie Summeour, III ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Commissioner.

On February 25, 2005, Plaintiff filed his application for supplemental security income payments, claiming disability as of August 1, 1999 (Tr. 29). After his application was denied initially and upon reconsideration, Plaintiff requested a hearing. On May 17, 2006, a hearing was held before an Administrative Law Judge ("ALJ") to review determination of Plaintiff's claim (Tr. 233A-57). On September 1, 2006, the ALJ found that Plaintiff was not disabled because he could

perform his past work as a cashier and a telephone solicitor (Tr. 31-34). The Appeals Counsel

denied Plaintiff's request for review (Tr. 5-7), and the decision of the ALJ became the final decision

of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ Findings**

The ALJ made the following findings:

> 1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2006.
>
> 2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision.
>
> 3.  The claimant has the following severe impairments: degenerative disc disease in the lumbar spine with a history of a disc herniation at the L5-S1 level and asthma. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> 4.  These claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1.
>
> 5.  The undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally or 10 pounds frequently and sit, stand, or walk for up to 6 hours each out of an 8 hour day. The claimant cannot stand more than 1 hour continuously. The claimant cannot perform more than occasional stooping or bending and should avoid concentrated exposure to dust, fumes, smoke, chemicals, or noxious gases.
>
> 6.  The claimant is capable of performing past relevant work as a cashier, telephone solicitor, food services worker, and short order cook. Some of these jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F..R. § § 404.1565 and

416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from August 1, 1999 through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Tr. 31-34).

## II.     Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled

without further inquiry.

    4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

    5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.150).

Plaintiffs bear the burden of proof at the first four steps.  Walters, 127 F.3d at 529.  The burden

shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that

there is work available in the national economy that the claimant could perform.  Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).


**III.**    **Standard of Review**

    In reviewing the Commissioner's determination of whether an individual is disabled, the

Court is limited to determining whether the ALJ applied the correct legal standards and whether

there is substantial evidence in the record to support the ALJ's findings.  Longworth v. Comm'r of

Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005).

    If the ALJ's findings are supported by substantial evidence based upon the record as a whole,

they are conclusive and must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir.

2004); 42 U.S.C. § 405(g).  Substantial  evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  Heston v. Comm'r of Soc. Sec., 245 F.3d 528,

534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is immaterial

whether the record may also possess substantial evidence to support a different conclusion from that

reached by the ALJ or whether the reviewing judge may have decided the case differently. <u>Crisp v. Sec'y of Health & Human Services</u>, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

**IV.**     **Arguments**

Plaintiff argues on appeal that substantial evidence did not support the decision of the ALJ, because the ALJ erred in finding that he retained the residual functional capacity to perform a significant range of light work [Doc. 11]. Plaintiff argues the ALJ erred in failing to find Plaintiff meets or medically equals the requirements of Listing of Impairments ("Listing") 1.04. Plaintiff also contends the ALJ's credibility finding was flawed because he ignored objective medical evidence.

The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by Plaintiff [Doc. 13]. The Commissioner argues that the ALJ correctly concluded that Plaintiff was not disabled, because he is capable of performing work that exists in significant numbers in the national economy, including Plaintiff's previous work as a cashier and telephone solicitor.[1] The Commissioner further argues Plaintiff failed to meet his burden in proving he satisfied Listing 1.04.

A claimant bears the burden is showing that his impairment meets or equals a listed impairment. <u>Bowen</u>, 482 U.S. at 146 n.5. In determining whether a claimant's medically determinable impairment meets or equals the requirements of any listing, the ALJ must consider all evidence in the record about the impairment(s) and the effects thereof on the claimant. 20 C.F.R. § 404.1526(c). In that connection, the ALJ may consider the opinion of a State Agency medical

---

[1]Light work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently. <u>See</u> 20 C.F.R. § § 404.1567(b) and 416.967(b).

consultant, but in the end, the ALJ (and the Commissioner) has the responsibility of deciding whether any impairment or combination meets the equivalency requirements of the Listings. 20 C.F.R. § § 404.1526(d) and (e).

Plaintiff insists that his back condition meets the requirement for listed disabilities under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 1.04A and C. Listing 1.04 refers generally to Disorders of the Spine. Listing 1.04A refers to evidence of nerve root compression characterized by specific clinical findings. Listing 1.04C refers to lumbar spinal stenosis that results in certain findings on diagnostic imaging techniques and certain specified physical limitations.

### A. *Plaintiff's Condition Failed to Meet or Medically Equal Listing 1.04A*

To be found disabled pursuant to Listing 1.04A, Plaintiff is required to demonstrate a spinal disorder with resulting nerve root or spinal cord compression "characterized by" neuro-anatomic distribution of pain, limitation of spinal motion, motor loss (atrophy with associated muscle weakness) with accompanying sensory or reflex loss and, "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, appendix 1.

The medical evidence indicates and the ALJ found that Plaintiff had a severe impairment of the degenerative disc disease of the lumbar spine with a history of a disc herniation at the L5-S1 level and asthma (Tr. 31).[2] Plaintiff was initially treated for acute joint pain and asthma by his family physician from July 2003 through April 2005 (Tr. 32). During that time, a lumbar MRI scan revealed a disc herniation at the L5-Si level of the spine, but no significant nerve root or spinal cord

---

[2]While the ALJ found Plaintiff suffered from asthma, Plaintiff does not challenge the ALJ's findings related to this impairment, thus this Court's review of the record is limited to Plaintiff's challenge to the ALJ's finding of disability related to his degenerative disc disease of the lumbar spine.

impingement was identified (Tr. 32; Ex. 3F). Moreover, Plaintiff was examined by Dr. R. Davis, a neurosurgeon, which also "failed to reveal any motor or sensory deficits." (Tr. 32; see also Ex. 2F & 9F). These exams revealed normal straight leg raising and the ultimate diagnosis was "mechanical low back pain." (Tr. 32; 163). Additionally, Plaintiff visited the emergency room for back pain in May 2005 and his clinical exam at that time revealed normal straight leg raising and no sensory deficits (Tr. 32; 189-92). Finally, Plaintiff was "consultatively examined" in May 2005 by Dr. J. Summers who found "slight limitation of motion in the lumbar spine, but no neurological or motor deficits. Straight leg raising was normal, as was the claimant's pulmonary exam." (Tr. 32; 172-73).

The record indicates that Plaintiff had some impairments; Dr. Summers concluded that Plaintiff would have "difficulty standing or walking more than 6 hours each out of an 8 hour day, lifting more than 20 pounds, bending or stooping." (Tr. 32; 173). However, the listing requirement states that the claimant must have "evidence of nerve root compression ... limitation in motion of the spine, motor loss ... *accompanied by* sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test..." (emphasis added). Plaintiff argues his MRIs on November 13, 2004 and July 7, 2005 "indicated nerve root impairment citing Tr. 170 and 196, respectively. However, a review of those MRI reports indicate that on November 13, 2004, impingement of the left L5 root was only "possible" (Tr. 170) and on July 7, 2005, impingement of the L5-S1 was referenced as "possible" or "suggested" (Tr. 196). However, even the Health Department referenced the second MRI finding as equivocal on September 9, 2005 (Tr. 212) and found no neurological deficit, but rather a dysfunctional reaction to pain on October 14, 2005 (Tr. 209). Even a subsequent MRI on September 2, 2006 made no mention of nerve root compression

or impingement, but rather noted the spinal cord was normal in appearance (Tr. 228). Furthermore, Plaintiff has consistently been found to have negative straight-leg raising test results (Tr. 173, 190, 201, 231). The medical record also indicates that Plaintiff has no motor deficit, though there was limited range of motion of the lumbar spine. Additionally, there was no evidence of atrophy with associated muscle weakness or muscle weakness. There was also no reflex loss or sensory loss. Thus, Plaintiff has failed to point to any medical evidence that clearly establishes that his impairments meet or equal Listing 1.04A and the ALJ's finding that he does not have a 1.04A listing-level impairment is supported by substantial evidence.

### B.    Plaintiff's Condition Failed to Meet or Medically Equal Listing 1.04C

To be found disabled pursuant to Listing 1.04C, Plaintiff is required to produce evidence of "lumbar spinal stenosis resulting in pseudoclaudication[3] ... manifested by chronic nonradicular pain and weakness, and resulting inability to ambulate effectively. 20 C.F.R. pt. 404, subpt. P, appendix 1. In this case, Plaintiff does have spinal stenosis, but the Court finds Listing 1.00B2b, regarding the inability to ambulate effectively, to be pertinent in its further analysis of Plaintiff's claim. Listing 1.00B2b states:

> The inability to ambulate effectively means an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.001) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities...
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel

---

[3]Pseudoclaudication, or neurogenic claudication, means intermittent limping caused by lumbar spinal stenosis. See *Stedman's Medical Dictionary* 360 (27th ed. 2000).

without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable place or rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

However, at the hearing, Plaintiff testified he lives in an apartment which is on the third floor and he must climb two flights of stairs to access it (Tr. 239). He also testified that he is unable to assist his girlfriend with the housework and grocery shopping (Tr. 247). He further testified that he does not use anything to help him walk, such as a cane (Tr. 248). However, there was no other testimony set forth in support of Plaintiff's inability to ambulate effectively. The evidence set forth by Plaintiff's own treating physicians does not provide objective evidence of his inability to ambulate effectively, but rather to the contrary. While Plaintiff notes a referral to gait training, it does not appear he even attended such. Further, it appears from the records of the Health Department that this referral was simply prescribed due to Plaintiff's subjective complaints, which referenced as "dysfunctional reaction" (Tr. 209). Conversely, Dr. Summers reported that in regards to gait, Plaintiff "ambulates in a normal manner with an upright station. He utilizes the assistance of no external orthotic device. The claimant is able to stand and walk on both heels and toes, perform a full squat, and stand on either leg singly." (Tr. 173). In addition to Dr. Summers's diagnosis, Dr. Davis, a neurologist who saw and treated Plaintiff in person, stated that Plaintiff's gait on July 13, 2005 was "intact" and his station and posture "normal" (Tr. 201). Further, Plaintiff's gait ambulation and walking was noted as normal by Dr. Davis on November 30, 2004 (Tr. 163), normal per Dr. Summers on May 4, 2005 (Tr. 173) and gait intact on September 7, 2004 (Tr. 230).

It must be remembered that Plaintiff has the burden of proof at step 3 that he meets listing requirements. The only evidence in the record, however, to support such a finding is his testimony. Considering the extent of the objective evidence in the record that Plaintiff can ambulate effectively, Plaintiff's testimony is insufficient evidence that he is disabled per Listing 1.04C. The ALJ, therefore, made no error when he concluded at step 3 that Plaintiff's impairments neither met nor equaled Listing 1.04C, and his finding is supported by substantial evidence.

### C.    Credibility Finding

A claimant's testimony, taken alone, will not establish that he is disabled; instead, there must be objective medical findings which show the existence of a medical impairment that could reasonably be expected to give rise to the subjective complaints alleged. C.F.R. § 404.1529(a). Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847 (6th Cir. 1986), established a two-part test for determining whether a claimant suffers from disabling pain. First, the court must determine whether objective medical evidence of an underlying medical condition exists. It if does, then the court must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. at 853. The ALJ's opportunity to observe the demeanor of the plaintiff is invaluable and should not be lightly disregarded. Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987). In this case, the ALJ acknowledged that Plaintiff has degenerative disc disease. Thus, Plaintiff must present evidence that the disease existed at such a severe level that it caused him disabling pain. The Court finds that Plaintiff did not meet this burden.

From July 2003 through April 2005, Plaintiff's family physician treated him for acute joint pain and asthma (Tr. 32; 168). During that time period, his clinical exams "were unremarkable and

he was offered only conservative treatment in the form of bronchodilators and anti-inflammatories"
(Tr. 32).  In November 2004, he was referred to a neurosurgeon who found Plaintiff, because of his
young age, should "continue with conservative treatment for as long as possible" (Tr. 162); "return
to his primary care physician for general symptom management" (Tr. 162); and start "physical
therapy for instruction on a home-based exercise program" (Tr. 163).  Furthermore, the one instance
where Plaintiff requested and received an "unable to work letter", the treating nurse opined that
Plaintiff should avoid prolonged standing, sitting, twisting, and lifting" (Tr. 32; Ex. 7F).  The ALJ
found the restrictions in the letter to be consistent with the residual functional capacity finding
outlined in his opinion.  Based on the neurological findings previously noted, the lack of limitations
on Plaintiff's activities, and his functional capacity results, coupled with the other supported findings
of the ALJ, this Court finds the ALJ's decision was supported by substantial evidence, and that
Plaintiff has not met his burden in presenting evidence that his disease existed at such a severe level
that it caused him disabling pain.

Thus, the Court finds that there is substantial evidence to support the ALJ's conclusion that,
although Plaintiff suffered from degenerative disc disease, the disease has not reached the level of
severity which would result in a disabling degree of pain.

## IV.    Conclusion

Accordingly, the Court finds that the ALJ properly reviewed and weighed all of the medical source opinions and Plaintiff's credibility to determine he is capable of performing past relevant work.  Substantial evidence supports the ALJ's findings and conclusions.  Therefore, it is hereby **RECOMMENDED**[4] that the Plaintiff's Motion For Summary Judgement [Doc. 10] be **DENIED** and that the Commissioner's Motion for Summary Judgment [Doc. 12] be **GRANTED**.

Respectfully submitted,


    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).